May it please the court. Good morning, your honors. My name is Robert Rojas, here on behalf of the appellant, United Insurance Company of America. We're here on appeal of the district court's denial of United's petition to compel arbitration and stay state court action. Your honors, as an initial matter, I'd like to briefly address Ms. Miller's argument that United lacks standing to petition to compel arbitration. Pursuant to section 4 of the statute, the party is aggrieved by the neglect, refusal, or failure of another to arbitrate under a written agreement to arbitrate. Here, the district court properly found that United has standing to petition to compel arbitration. The court found that United is a party and a signatory to the arbitration agreement, that Ms. Miller has refused to arbitrate her state court claims, and that if valid under the agreement, those claims would fall under the arbitration agreement. And with that, United has standing to compel to petition this arbitration. Counsel, is reliable the alter ego of United, or what exactly is their relationship? Your honor, reliable is a wholly owned subsidiary of United Insurance Company. We contend that United Insurance Company is actually the employer of Ms. Miller. We recognize that's a dispute. With the damages, if plaintiff is successful, would the damages come from liable for those damages? Directly liable. Well, we believe they have a sufficient financial stake. So even if they're not directly liable for those damages, your honor, we believe that they have a sufficient interest and financial stake for a number of other reasons, which are disputed facts. This seems to be a very unusual case. Is this common for a corporate owner of a subsidiary to, in essence, replace the subsidiary in litigation, putting itself in the line of fire, so to speak, for liability? It seems quite unusual, but I may be wrong. But if you're aware of many similar circumstances, I'm not. I'd like to be educated on it. Your honor, I would agree with you that this may not be the ordinary course of action. And I agree also that with respect to putting itself in the line of fire, that wouldn't be the ordinary course. But that's not exactly what we're arguing here. We're arguing that we do contend that United's the employer. And therefore, as the employer, it has a sufficient stake in the underlying state court action. And we also recognize that United is not a named party in that state court action. But that's not dispositive here, nor are any of the other disputed issues of standing regarding whether or not United probably has standing. If there are any disputed issues on those facts, then the proper course would be to remand. So you think their signature on the arbitration agreement is the basis for their controversy with the plaintiff? Yes, your honor. As the district court had found, based on their position as the sole signatory and party to the arbitration agreement, other than Ms. Miller, United has standing to bring this petition to compel arbitration. Don't we have to disregard the arbitration agreement when we determine standing? Your honor, that's a good question. No. Ms. Miller argues that under Vaden, that the arbitration agreement should be disregarded and the court should imply a look-through approach. This court in Northport Health Services versus Rutherford found that Vaden's look-through approach to disregard the arbitration doesn't apply when we're dealing with a situation such as this with diversity jurisdiction. And Vaden was specific that it only applied the look-through approach in looking at whether federal question jurisdiction existed. So going back then to the direct interest of United, if United is not directly financially liable here, aren't you asking us to effectively Your honor, I don't believe we are. Even beside any financial interest, I believe there's a sufficient interest here. As the district court found looking at other cases, specifically Doctors Associates versus Hollingsworth, there, in the state court action, the plaintiff sought suit against the owners of a franchisor. And even though the franchisor wasn't named in the underlying state court action, the district court there found the franchisor as a party to the arbitration agreement had a sufficient underlying interest to confer standing to petition to compel arbitration. Moving on to United's specific points on appeal, your honors, we argue that the district court erred in denying United's petition to compel arbitration for two specific reasons. First, the district court erred by applying Missouri law instead of Illinois law to determine whether a valid arbitration agreement existed. And second, the district court erred in finding there was no consideration to support a valid arbitration agreement. Why wouldn't Missouri law be the applicable law since it's the law of the forum? Your honor, the party has expressly agreed to a choice of law provision here in this arbitration agreement. But that's assuming you get to the arbitration agreement before you decide whether or not it's enforceable. Yes, your honor, we contend that you don't need to get to the arbitration agreement and determine its enforceability before determining whether the choice of law provision should be enforced. Pursuant to the, and we understand that there's an argument, there's a circular logic or circular reasoning argument that you can't put the cart before its horse, so to speak. But the United States District Court for the Western District of Missouri in Johnson versus C.H. Robinson just this past July had actually rejected that argument. They noted that contrary to the circular logic argument, they applied a Minnesota choice of law provision in an arbitration agreement before determining whether an agreement was enforceable. Well, that's not controlling on us, so it's interesting. We'll definitely read it, but I'm not real sure that makes good sense to say you look at the arbitration agreement to determine what law to apply to determine if the agreement itself is enforceable. Yes, your honor. Well, I understand the binding fact. The Western District of Missouri in Johnson actually looked to a recent Missouri Supreme Court decision in Reed versus Riley, which was decided after the district court's opinion here. And there the court relied on that decision, which enforced a form selection clause before determining the enforceability of that arbitration agreement. Well, what's the status of the Reed case? Of what application is it in this case? I believe in looking at the law issue and specifically the Missouri Supreme Court and how they've addressed this choice of law issue, I think that would be certainly persuasive to look to that instead of the other Missouri Court of Appeals decisions that Ms. Miller would argue control here, and that would apply this circular logic argument. Well, does Reed help your case or hurt it? Your honor, Reed helps our case significantly. But even if the choice of law provision is not enforced in this case, and even if it was appropriate to apply Missouri law, the district court erred in finding no consideration to support a valid arbitration agreement. In Missouri, consideration generally consists either of a promise to do or refrain from doing something, or the transfer of giving up something of value to the other party. Importantly, consideration need not be fair or equal for a contract to be enforceable, and it's a fundamental principle of Missouri contract law that courts have no authority to evaluate the adequacy of consideration. With that, the only question before the court is whether, and the only question the district court should have addressed, is whether consideration existed, not how much or the adequacy of that consideration. Well, under Missouri law, is at-will employment enough? Your honor, looking to the FAA's instruction to apply ordinary contract law principles and put all contracts on equal footing, we think that under those ordinary contract law principles, at-will employment is sufficient. Now, we understand that the Missouri Supreme Court in Baker v. Bristol Care, a divided Missouri Supreme Court, held that at-will employment was not sufficient consideration to enforce an arbitration agreement. But we believe the Missouri Supreme Court got that wrong, and specifically, it was the dissent in the Missouri Supreme Court's decision in Baker that really pointed out the inherent flaws in the majority's rationale there. The dissenters in Baker found the majority's rationale, quote, represented the application of a special rule regarding consideration in employment contracts involving arbitration promises. Those judges went on to reason that the FAA, as construed in Casaroto, Perry, and Allied-Bruce, precludes the application of such rule. That's the dissent's view? That is the dissent's view, yes, your honor. So that's not the law? It is not the law. We, and your honor, respectfully, we contend that the Missouri Supreme Court, by singling out arbitration agreements, has gotten the law wrong. We believe that the FAA should preempt those decisions that don't put arbitration contracts on equal footing with all other contracts. And your honor, specific to that, Missouri courts before Baker and before the decision which Baker relied on, repeatedly held that at-will employment provides consideration for a contract. In 1976, in Reed-Roberts Associates, the court found that continued employment, quote, supplies adequate consideration for a secondary contract, end quote. That holding was restated several times over the course of the following decades. And indeed, this court, in Safety Clean Systems versus Hankins, found that, quote, under Missouri law, an at-will employee's continued employment, after signing a covenant not to compete, is sufficient consideration for the covenant. Your honor, as I see I'm going into our rebuttal time here, one point that I, sorry, your honor. I'm sorry, did you have a question? No, no, no. One point we'd briefly like to make here is an issue that arose earlier this week. The underlying state court action in this case is set for trial in January. We had a conference, a status conference, with the court on Monday. And that trial court judge indicated a reluctance to move the trial court setting without any direction from this court. So we'd ask that the court direct Ms. Miller not to pursue the trial of the underlying action until this court rules on the pending appeal, your honor. Counsel, let me ask you one question about that quickly. If United is actually the employer here, why didn't United seek removal from state court? To, yes, your honor. To remove it to federal court, your honor. United is not a party in the underlying state court action, your honor. But they're the employer. Why didn't they seek to intervene? They could have intervened and become a part. Uh, yes, your honor. We chose that pursuant to section four. Because we were a party and a signatory to the arbitration agreement, we believe that section four provides the right as an aggrieved party and Ms. Miller's refusal to arbitrate that we have the ability to petition the court here. Thank you, your honors. But I don't see, I guess I'm confused as to why they would be waiting on us to do anything. Why they couldn't proceed with the parties they have in front of them. And what connection the procedure in state court has to this case? Well, your honor, United filed the petition in federal court because it was, you know, candidly, we had diversity jurisdiction, um, as other courts have held, um, where non-diverse state court defendants would, uh, destroy diversity jurisdiction. It is appropriate for the diverse state court entity to seek to compel arbitration in federal court. Thank you, your honors. Mr. Jones. May it please the court. My name is Kevin Jones. I'm here on behalf of LaTosha Miller. I want to first address the Chief Judge's point about this being an unusual case. It is an unusual case. The only reason United has filed this case as opposed to the employer, Reliable Life Insurance Company, is because they needed to establish diversity jurisdiction to invoke, uh, um, section four of the FAA. And they, they needed, they chose to do that and misrepresent themselves as the employer because they wanted to get this issue away from Judge Powell, who this state court's case was initially assigned to, and who had also denied a similar arbitration motion in the prior Lisa White Turney case that was based on the same arbitration agreement that they're trying to invoke here. So it's really just a form-shopping strategy that we would suggest the court should not indulge. I want to address the subject matter jurisdiction issue, uh, uh, and specifically why we believe that the look-through framework that was prescribed in Vaden versus Discover Bank applies to this case in this subject matter jurisdiction issue. And in considering the Vaden decision, I think it's important for the court to remember that it was a statutory construction case where the court's holding was driven by the text of section four. And what the court held in that decision was that the phrase in section four that said, uh, um, uh, save for the arbitration agreement was a statutory mandate that the district courts are to assume the absence of the arbitration agreement in determining whether subject matter jurisdiction exists over a separate underlying controversy that the section four petitioner is seeking to arbitrate. And when we look at the text of section four, we can see that that mandate to assume the absence of the arbitration agreement does not distinguish between the jurisdictional heads of title 28. It applies to any case that's brought under title 28 and any jurisdictional issue that's brought under title 28. And a fundamental jurisdictional issue in every single case that's brought under title 28 is article three standing in article three's case or controversy requirements. So we suggest that that same mandate in section four of the FAA to assume the absence of the arbitration agreement applies equally when we're trying to determine whether there is an article three case or controversy that is separate and apart from the arbitration agreement that the court could exercise jurisdiction over. And on this point, I would invite the court to consider the Fifth Circuit's decision in Papaloti Creek, the Papaloti Creek case that we cited in our brief. In that case, the court specifically held that Vaden's look-through approach was not limited to cases that were based on federal question jurisdiction. Counsel, can the Papaloti decision be harmonized with the Eighth Circuit's decision in Rutherford? Absolutely. Rutherford does not control, and I'm glad you brought that up because I know Judge Woolman was on that panel. So I want to assure the court that we're not asking this court to do anything that would undermine that holding in that case because it dealt with a completely separate jurisdictional issue that does not require a look-through analysis. The issue that the court decided in the Rutherford case was the citizenship of the parties for purposes of establishing diversity jurisdiction. The court determined that Vaden did not apply, the look-through analysis did not apply to that jurisdictional inquiry. And that squares up with the text of Section 4 and its mandate to assume the absence of the arbitration agreement because the court can analyze that jurisdictional issue without looking to the arbitration agreement. The rule has always been that the citizenship of the parties is determined by who the parties are to the civil action, and the rule isn't who the parties are to the arbitration agreement. The court can look to the parties of the civil action and determine whether they are diverse or not without relying on the arbitration agreement that's in dispute. So we think that our position is in harmony with the court's decision in Rutherford, and it doesn't undermine it in any way, shape, or form. If we apply Vaden as we're supposed to, and if we disregard the arbitration agreement as we're supposed to in any dispute about its enforceability, we are left with no other controversy here as between my client and United Insurance Company. And on this point, it's important to remember that it is United's burden as the party invoking federal jurisdiction to both plead and prove the existence of an Section 4 petition in this case. The only underlying substantive controversy identified and alleged to exist by United is the state court lawsuit that my client filed against Reliable Life Insurance Company and Derek McIntyre. And again, United is not a party to that case. They've never sought to intervene in that case. We've not made any allegations of wrongdoing by United. We've never made any allegations that Reliable was the alter ego of United, such that United could be held liable for any of the conduct of the defendants in that case. Were there ever any contacts other than the arbitration agreement signatures between a plaintiff and United? We would submit no, Your Honor. The arbitration agreement has United, but it also covers Reliable and a number of other entities. It's basically a standard form arbitration. Did she ever get information from United? Pardon? Did she ever get any information from United? Any correspondence? Were her checks, did her paychecks come on a check from United? Well, they've submitted some documents that, on the paycheck issue, that look like they come from Kemper, which is another affiliated entity, or United. My client never recalled, we never got into discovery on this, but she doesn't recall ever seeing any of those. With that name on it, here's the critical point that establishes who my client's employer was. They admitted in the agency proceedings that came before this lawsuit that my client was the employer. And that's in the appendix, that's in the Reliable's position statement that was submitted on Reliable Life Insurance letterhead, written by a Reliable attorney, in which Reliable says that my client worked for Reliable. We point that out in our brief, Your Honor. And all the employment documents that we've offered to the district court below, the application, the hiring paperwork, the termination paperwork, all say Reliable Life on it, not United. And interestingly enough, on the application for employment, there is a place where you can select United, and it was left blank, and they chose Reliable. So we don't believe there's any controversy here, no underlying controversy here between my client and United Insurance. And their status as the affiliate is insufficient to invoke Article 3, or to meet the Article 3 requirements of standing. To hold otherwise would violate the shareholder standing rule that has been well established in our case law. I want to move on to the choice of law issue and make a couple of points about that. And the first, I think the simplest way to address the choice of law question is to look at what the choice of law provision says. It says that it only applies to enforceability disputes. We don't have an enforceability dispute here. We've raised a contract formation question, and their whole argument ignores that distinction, but the distinction between those two types of defenses. And the Missouri Supreme Court has been very clear on the distinction between the two types of defenses in the Baker versus BristolCare case. They have said that a lack of consideration argument, like we've raised here, goes to the contract's formation and attacks essentially one of the essential elements of forming a contract. Whereas an enforceability dispute presumes that a contract's been formed and it seeks to avoid enforcement of that already formed contract. They're two legally distinct types of contract defenses. And that's what their argument fails to appreciate. And that's what the decision in the District Court's Johnson case that they provided in the Rule 28J letter also fails to appreciate. That was written by Judge Sachs, who is a well-respected judge, but he failed to cite the Baker case at all. And I think the only reason I can surmise why he forgot to cite is because the parties probably didn't bring it to his attention. But I have to believe that Judge Sachs' analysis would have been impacted by the Baker decision had it been brought to his attention. So the main point here is that even if we enforce this arbitration, this choice of law provision, it doesn't help them avoid Missouri law on formation issues because it does not apply to formation issues. And there's no formation here because what? Because it lacks consideration. That is an essential element of contract formation. And the Baker case is clear on that. And how was the District Court wrong on that? Was not wrong on that. I mean, from the other side's point of view, what was the consideration here? There was no consideration. Well, that's your point, but they argue what? Well, they argue that it was the mutual promise to arbitrate and the at-will employment. And there's no case law to support that? To support their argument? No, no, there's no. That's the problem here. Back to the 28J letter, what about the one that was, what's the impact of this recent, or this other recent Missouri Supreme Court case? Oh, the Reed case. Pinkerton case. What of relevance is that to our analysis? I don't think it is relevant to this inquiry at all. One, I would say that they've waived that argument. That was not a recent, that was decided over a year ago. And I have some familiarity with that case, having been counsel for the appellant in that case. And it does not apply for the same reasons that the choice of law provision doesn't apply here. Because it would require the court to give legal effect to a provision of contact, to a provision of the contract before the contract has been formed. And the same argument applies to the purported delegation provision that they are now arguing exists. And they're relying on the Reed case, which wasn't cited in the briefs because that was raised in a Rule 28 J letter. And I would like to address that really quickly. That dealt with enforcement of a form selection clause, but there's nothing in that opinion to suggest that the Missouri Supreme Court enforced the form selection clause before the underlying employment agreement in which it was found was formed. In fact, there's nothing in that opinion to suggest the plaintiff ever challenged formation of the underlying employment agreement. The only possible formation issue that the court considered had to do with the employee's argument that the form selection clause required separate and additional consideration for it to be enforceable. So that argument actually presumes or implies that there was consideration for the underlying employment agreement. The employee was just arguing that the form selection clause had to have separate and additional consideration, which I think the Missouri Supreme Court rightly rejected. There's no Missouri contract law that I'm aware of that says each and every contractual provision has to have its own separate consideration. We're not making that same argument here. We're not saying the choice of law provision needs its own separate consideration. We're saying that there's no consideration for the whole contract, the whole arbitration agreement. So none of its terms can be enforced. Counsel, how do you respond to the argument that Missouri has improperly singled out arbitration agreements for different treatment than in other normal situations for what constitutes consideration? Well, I don't think there is evidence that Missouri courts have singled out arbitration agreements. They've relied on their argument to disregard the whole body of case law. And there are many cases which hold in a variety of contexts that at-will employment is insufficient consideration for a contract. And their whole argument in urging this court to overrule all those cases as violative of the FAA relies on a line of non-compete cases where Missouri courts have held that at-will employment is sufficient consideration to enforce a non-compete agreement. Now, their argument, again, ignores a critical distinction in Missouri law that Missouri courts draw between non-compete agreements and ordinary contracts. And this issue about FAA preemption was specifically discussed in the Morrow case that we've cited in our brief. And what the court said was these non-compete agreements and restrictive covenant agreements, those aren't ordinary contracts. Those have historically been enforced based on principles of equity rather than law. And Morrow specifically recognized that, and this is what Morrow says, is that those non-compete agreements are not true creatures of contract law. And so the ordinary rules of contract law do not apply to non-compete agreements. Morrow says that. So at most, their line of non-compete cases establishes that Missouri courts treat non-competes differently than ordinary contracts. It does not stand for the proposition that Missouri courts treat arbitration agreements differently than ordinary contracts. So we think that their reliance on that line of non-compete cases is misplaced. I would also say that they've not cited a single non-compete case since the Baker decision. So to the extent those can be read as creating an inconsistent standard for arbitration agreements, they've been abrogated by Baker, where Baker says that at-will employment is insufficient consideration for a contract. But is it also true that under Missouri law, if there's an absence of mutuality in a arbitration clause, that it's not enforceable? Absolutely, Your Honor. If there's no... It's our position. They're making the argument that they made a promise to arbitrate here. But we're saying that they've made no promise to arbitrate. And that's because the exemption in the arbitration agreement for the employer's claims is written so broadly, it virtually allows them to bring any claim they want in court against my client. And the non-compete or the arbitration agreement specifically exempts claims relating to the non-compete. And if we go to the non-compete agreement, we would submit those provisions to find the scope of that exemption. And if you go to the non-compete agreement, we will find numerous provisions in that agreement which expansively define United's rights and remedies and expressly reserve United's rights and remedies at law and in equity against my client. And we believe the clearest expression of how broad that exemption is is in paragraph 16, where it says that any claim arising out of or relating to this agreement shall be brought in a state or federal court of competent jurisdiction. We believe that allows United to be able to bring any claim it wants in court simply by alleging that it relates to one of the non-compete provisions, which is an easy allegation to make given how expansively they've defined their rights and remedies under the non-compete agreement. I see that my time is up. I appreciate the court's indulgence. We would ask that the district court's dismissal of United's section four petition be affirmed. Thank you, Mr. Jones. Mr. Rojas, your rebuttal. Please, court. Thank you, your honors. I'd like to quickly address a number of issues that Ms. Miller's counsel addressed in his argument. The issue of the non-compete case is somehow being creatures of a different contract. Citing to the Morrow decision, the Court of Appeals decision, Morrow did try to make that distinction. However, again, we go to the Baker versus Bristol care decision, the divided Missouri Supreme Court, and we need not look any further than the dissent in that case. And the dissent clearly called out the consideration or that at-will employment is sufficient consideration. They cited the non-compete cases for that proposition and clearly called out the majority as applying one rule to arbitration agreements and a completely other rule to other general contracts in Missouri. Additionally, the idea that there's no subsequent authority that would dispute this. In the Johnson versus C.H. Robinson case that was decided this past July, Judge Sachs in dicta in determining whether or not to enforce that Minnesota choice of law provision instead of applying Missouri law went on to state in dicta, there is considerable authority in this district either concluding or predicting that Missouri law and arbitration agreements entered into as a condition of original employment will be accepted as being supported by valid consideration. So we think that this is clearly in dispute. We think that not only Judge Sachs got it right. We think the dissent in Baker is clearly calling out the majority there. But even beyond that, if at will employment is found not to be sufficient consideration, sufficient consideration existed in the forms of both mutual promises to arbitrate as well as United's offer to pay the administrative fees of the arbitration in this case. Here, consideration exists when a contract contains mutual promises to refer disputes to arbitration, your honors. The arbitration agreement contained those mutual promises to arbitrate disputes, but the district court found the agreement lacked mutuality of obligation because it excluded United's claims for injunctive relief and non-compete actions. The court relied on Jimenez versus Syntax Corporation, but in doing so, really took the principle too far and went right to the heart of what we're talking about. It evaluated the adequacy of consideration. We acknowledge here that the agreement at issue excluded certain non-competition and injunctive relief claims. But that being said, there's nothing in Missouri law that says these promises to arbitrate need to be completely equal. So the court improperly looked at the adequacy of the consideration there. In addition, it agreed to pay fees and the district court erred and held that a promise to pay the cost of arbitration is not consideration to support an arbitration agreement. They erred in doing so. I'm out of time, your honor. Thank you, Mr. Rojas. Thank you also, Mr. Jones, for your presence today and the argument you've provided to the court. We'll take your case under advisement and rendered decision in due course. Thank you.